# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KEVIN W. ROSS,**

      **Plaintiff,**

**v.**

**THE COLEMAN COMPANY,**

      **Defendant.**

**Case No. 19-4115-DDC-GEB**

## <u>MEMORANDUM AND ORDER</u>

This matter is before the court on the following motions:  defendant's Motion to Dismiss (Doc. 6), plaintiff's Motion for Leave to Amend Complaint (Doc. 19), plaintiff's Motion for Leave to Toll (Doc. 20), and plaintiff's Motion to Appoint Counsel (Doc. 25).

Plaintiff Kevin Ross, proceeding pro se[1] and *in forma pauperis*, brings this action against defendant The Coleman Company.[2]  The Complaint (Doc. 1) alleges discrimination, a hostile work environment, and retaliation under Title VII.  Defendant filed a Motion to Dismiss (Doc.

---

[1]      Because plaintiff proceeds pro se, the court construes his pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).  But, under this standard, the court does not assume the role as plaintiff's advocate.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  The court does not construct arguments for plaintiff or search the record.  *Id.*

[2]      The Complaint also asserted Title VII claims against another defendant, Staffmark Group.  Doc. 1 at 2.  Because plaintiff proceeds *in forma pauperis*, the United States Marshal Service attempted to serve Staffmark Group at the address plaintiff provided.  But the summons was returned unexecuted on January 22, 2020.  Doc. 8.  It appears that plaintiff had provided an incorrect address for Staffmark Group.  Doc. 8-1 at 1.  Plaintiff never provided a correct address for Staffmark Group or effected service of process.  On April 3, 2020—four months after plaintiff filed his Complaint—the court ordered plaintiff to show cause why the court should not dismiss his claims against Staffmark Group for lack of prosecution under Fed. R. Civ. P. 41(b).  Doc. 9 at 1–2.  Plaintiff failed to show cause or to effect service on Staffmark Group, and so on April 27, 2020, the court dismissed his claims against Staffmark Group without prejudice.  Doc. 11.  Because defendant The Coleman Company is the only remaining defendant in the case, the Order refers to The Coleman Company as "defendant."

6).  Since then, plaintiff has filed three motions requiring the court's disposition.  *See* Doc. 19;

Doc. 20; Doc. 25.  The court now addresses all four motions in turn.

I.      **Defendant's Motion to Dismiss (Doc. 6)**

Defendant has filed a Motion to Dismiss (Doc. 6) under Federal Rule of Civil Procedure

12(b)(6).  Plaintiff responded (Doc. 17), and defendant replied (Doc. 18).  For reasons explained

below, the court grants defendant's Motion to Dismiss (Doc. 6).

**A.  Factual and Procedural Background**

The following facts come from plaintiff's Complaint (Doc. 1).  When deciding a motion

to dismiss, the court accepts the pleaded facts as true and views them in the light most favorable

to plaintiff.  *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Defendant manufactures recreational products.  Doc. 1 at 2 (Compl. ¶ 6).  The company

operates a production facility in Wichita, Kansas.  *Id.*  Plaintiff began working at this facility on

September 24, 2018.  *Id.* at 3 (Compl. ¶ 10).  He secured a job there through Staffmark Group, an

employment agency.  *Id.* at 2–3 (Compl. ¶¶ 5, 10).  Plaintiff worked in the "blow mold area" of

the facility.  *Id.* at 3 (Compl. ¶ 10).  He usually worked under the supervision of Julius, a black

person employed by Coleman who worked as a "team leader" in plaintiff's work area.  *Id.*

Around December 3, 2018, Julius was off work, so a white employee named Kipp replaced him

as plaintiff's "team leader" and supervisor.  *Id.* (Compl. ¶ 11).  That day, plaintiff was operating

"machine 10" with a white colleague named Thornton.  *Id.* (Compl. ¶¶ 11–12).  Thornton and

plaintiff each worked one of the machine's conveyor belts.  *Id.* (Compl. ¶ 12).  During this shift,

plaintiff and Thornton were "experiencing bad parts exiting from both sides of machine 10."  *Id.*

at 4 (Compl. ¶ 13).  Plaintiff observed that the machine was set at its normal speed.  *Id.*  During

plaintiff's shift, Kipp fixed the machine several times.  *Id.* (Compl. ¶ 14).  During the final hours

of plaintiff's shift, Kipp increased the machine's speed.  *Id.* (Compl. ¶ 15).  Plaintiff conferred

with Thornton, who confirmed that the machine seemed to be operating at a faster rate.  *Id.*

(Compl. ¶ 15).  Plaintiff rechecked the machine's speed setting and noticed that the rate of speed

had been increased.  *See id.* (Compl. ¶¶ 13, 16).  As neither plaintiff nor Thornton was able to

keep up with the accelerated pace of the machine, parts began falling to the floor.  *Id.* (Compl.

¶ 16).  Plaintiff saw that Kipp was watching from machine 11.  *Id.*

As plaintiff's shift ended, Kipp spoke with plaintiff.  *Id.* (Compl. ¶ 17).  Kipp shared that

one of his two pet-peeves was letting parts fall to the floor, and then "accused [plaintiff] of

purposely letting parts fall on to the floor."  *Id.*  Plaintiff told Kipp that he felt deeply offended

by the false accusation.  *Id.*  "Kipp didn't say anything to Thornton about parts falling to the

floor on his side of the conveyor belt."  *Id.*  Plaintiff then quit his job at the Coleman plant.  *Id.* at

5 (Compl. ¶ 18).

Immediately after quitting, plaintiff contacted Maureen Meacham in Staffmark Group's

human resources department and asked to file a discrimination charge.  *Id.*  Ms. Meacham

directed plaintiff to file a complaint with Brent Cunningham, Staffmark's "first shift liaison

associate, . . . who worked inside the Coleman plant."  *Id.*  Plaintiff submitted a formal

discrimination complaint to Mr. Cunningham.  *Id.* (Compl. ¶ 19).  Plaintiff later received a letter

from Ms. Meacham "stating that there wasn't enough substantial evidence to prove his allegation

of harassment/discrimination."  *Id.*  About one month after submitting that discrimination

complaint, plaintiff requested "reassignment to a different shift" and Ms. Meacham informed

plaintiff that he still was eligible to work for Staffmark.  *Id.* (Compl. ¶ 21).  But, when plaintiff

talked to the "liaison office outside the Coleman plant" about reassignment, he learned that "he

could not return to the Coleman plant because Coleman didn't want him back."  *Id.*

Later, on August 9, 2019, plaintiff later filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  *Id.* at 1.  The EEOC issued plaintiff a right-to-sue letter.  *Id.*  Plaintiff filed this lawsuit on December 2, 2019.  *Id.*

**B.  Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court explained, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the complaint's factual allegations are true.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When evaluating a motion to dismiss under Rule 12(b)(6), the court may consider the complaint itself along with any attached exhibits and documents incorporated into it by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); then citing *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); then citing *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994)). A court also "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation omitted)). Here, the Complaint refers to the right-to-sue letter that the EEOC issued to plaintiff. Doc. 1 at 1. This letter is central to plaintiff's claim and the parties do not dispute its authenticity. Defendant attached the letter as an exhibit to the Motion to Dismiss, *see* Doc. 6-1, and plaintiff also attached certain pages of the letter to his responsive filing. *See* Doc. 17-2 at 5, 7. The court thus considers the right-to-sue letter (Doc. 6-1) when evaluating the Motion to Dismiss.

**C.  Discussion**

Defendant asserts that the court should dismiss the Complaint for two reasons:  (1) plaintiff's claims are time-barred, and (2) even if plaintiff had filed his suit timely, the Complaint fails to allege facts that plausibly support a claim for relief under Title VII.  *See* Doc. 6 at 4–9.  Defendant asserts that plaintiff's claims are time-barred because he failed to file his Complaint within the statutory time limits prescribed in 42 U.S.C. § 2000e-5(f)(1).  Doc. 6 at 4. The court agrees.

A Title VII plaintiff must file his lawsuit within 90 days of receiving his right-to-sue notice from the EEOC.  42 U.S.C. § 2000e-5(f)(1); *see Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1161 (10th Cir. 2018) (explaining that plaintiff's "'window' to sue closed" 90 days after EEOC issued its right-to-sue letter); *Tadlock v. Marshall Cnty. HMA, LLC*, 603 F. App'x 693, 700 (10th Cir. 2015) ("If the claimant fails to file suit within 90 days, the claims alleged in the EEOC charge are foreclosed . . . ."); *see also Palmer v. Pentair*, No. 18-02638-CM-TJJ, 2019 WL 3239350, at *4–5 (D. Kan. July 18, 2019) (holding that plaintiff's Title VII claims were untimely where the associated right-to-sue window closed before plaintiff filed suit).

Plaintiff alleges that the EEOC "granted" him a right-to-sue letter.  Doc. 1 at 1.  The EEOC mailed that letter to him on August 19, 2019.  *See* Doc. 6-1 at 2.[3]  When the EEOC mails right-to-sue notices to Title VII claimants, "courts routinely apply a presumption of receipt[.]" *Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001).  Plaintiff pleads no facts about when he received his letter.  *See* Doc. 1 at 1.  "When the receipt date for an EEOC right-to-sue letter

---

[3]      This date is not among the Complaint's allegations, but the court considers the content of the right-to-sue letter under *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) as discussed above. The right-to-sue letter is referenced in the Complaint, central to the plaintiff's claim, and the parties do not dispute its authenticity, so the court considers the document.  That portion of the letter, provided by both parties, shows that it was mailed August 19, 2019.  *See* Doc. 6-1 at 2; *see also* Doc. 17-2 at 5, 7.

is unknown or disputed, federal courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Lozano*, 258 F.3d at 1164 (collecting cases).  Our Circuit "implicitly [has] sanctioned applying either a five-day or a three-day presumption."  *Id.* at 1165 (first citing *Witt v. Roadway Express*, 136 F.3d 1424, 1429–30 (10th Cir. 1998); then citing *Jarrett v. US Sprint Commc'ns. Co.*, 22 F.3d 256, 259 (10th Cir. 1994)).

Here, applying the more lenient five-day rule creates the presumption that plaintiff received his right-to-sue letter on August 24, 2019.  Plaintiff's 90-day window to file suit thus was closed November 23, 2019—the day following the expiration of the 90-day window. Plaintiff filed his lawsuit on December 2, 2019.  Doc. 1 at 1.

Plaintiff acknowledges that a "filing delay" occurred.  Doc. 17 at 8.  He asserts that the late filing doesn't foreclose his claims for two reasons:  (1) someone from the EEOC's "call center" informed plaintiff in December 2018 that "he had one year from the date of the incident to file a lawsuit in Federal Court . . . ." and (2) defendant failed to file its Motion to Dismiss on time.  *Id*. at 8–9.

To support his first argument, plaintiff invokes Federal Rule of Civil Procedure 60's "excusable neglect" provision.  *Id.* at 8.  The court construes this argument as one asserting that the court should excuse the Complaint's untimeliness and deny defendant's Motion to Dismiss because plaintiff did not know of the 90-day filing deadline and he relied on the inaccurate deadline information provided by the EEOC call center.  Plaintiff argues that these facts qualify as excusable neglect under Rule 60(b)(1).  *See id.*

The court is unpersuaded.  Rule 60(b)(1) authorizes the court to "relieve a party . . . from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect."  But plaintiff asks the court to excuse the tardiness of his own

Complaint, not for relief from a final judgment, order, or proceeding.  Rule 60(b) thus does not apply here and cannot revive plaintiff's expired cause of action.

In contrast, equitable exceptions of waiver, estoppel, and equitable tolling do apply to the 90-day window for filing a Title VII lawsuit.  *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996).  But courts "narrowly construe[]" these exceptions.  *Id.* "Generally, equitable tolling is warranted only if the circumstances of the case 'rise to the level of active deception which might invoke the powers of equity.'"  *Scott v. Boeing Co.*, 48 F. App'x 730, 732 (10th Cir. 2002) (quoting *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838–39 (10th Cir. 1979)).  "For instance, equitable tolling may be appropriate where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts.'"  *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (quoting *Carlile v. S. Routt Sch. Dist. RE 3-J*, 652 F.2d 981, 986 (10th Cir. 1981)).

The limits of these equitable doctrines apply to pro se plaintiffs.  *See Jones v. Next Day Motor Freight, Inc.*, 64 F. App'x 737, 738–39 (10th Cir. 2003) (affirming summary judgment for defendant where pro se plaintiff did not file his suit until 109 days after receiving right-to-sue letter and there was no indication of active deception); *see also Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002) (affirming dismissal of plaintiff's Title VII claims as untimely and holding that difficulties faced by many litigants such as "limited education and little understanding of the law or of the intricacies of the procedural framework of Title VII actions" do not suffice to justify equitable tolling (quotation mark and citation omitted)).

Here, plaintiff asserts that he had a phone conversation with the EEOC in 2018 and it led him astray.  Doc. 17 at 8 ("Plaintiff was advised he had one year from the date of the incident to file a lawsuit in Federal Court").  Months after that conversation, he filed charges

with the EEOC and in August 2019 "was granted a right to sue letter from the EEOC[.]"  Doc. 1 at 1.  This letter itself explicitly emphasizes the limited lifespan of plaintiff's claim. Prominently, it advises, "Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost."  Doc. 6-1 at 2 (emphasis and underlining in original).  Another page of the EEOC's notice—entitled "Information Related to Filing Suit Under the Laws Enforced by the EEOC"—provides more information about filing deadlines and reemphasizes that "[o]nce this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost." *Id.* at 3.

Even if plaintiff's conversation with the EEOC in 2018 created a misunderstanding about filing deadlines, plaintiff asserts no facts capable of supporting a finding or inference that the EEOC created that misunderstanding intentionally. *See Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002) (concluding that the district court did not abuse its discretion in finding that plaintiff was not actively deceived into filing an untimely suit where plaintiff did not assert that he was actively or intentionally misled).  Moreover, plaintiff's perpetual reliance on that 2018 conversation was not reasonable. *Cf. Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 859 (10th Cir. 1983) (reversing dismissal for untimely filing of Title VII complaint where pro se plaintiff reasonably relied on a letter that the district court clerk sent him stating that it was "office policy" that the filing of plaintiff's right-to-sue letter tolled the limitation period until plaintiff obtained counsel).  Here, plaintiff filed charges with the EEOC on August 9, 2019.  Doc. 1 at 1.  Ten days later, the EEOC responded to plaintiff's filing by mailing him a right-to-sue letter informing plaintiff of his remedial rights and their associated deadlines. *See* Doc. 6-1 at 2–3.  The notice provided plaintiff with clear guidance about filing deadlines and the consequences of untimely filing. *See id.*  Given this sequence of plaintiff's communications

with the EEOC and the content of the EEOC's right-to-sue letter to plaintiff, the court cannot conclude that plaintiff's 2018 conversation with the EEOC constitutes active deception of the claimant or an otherwise extraordinary circumstance that can justify equitable tolling. And while plaintiff alleges that he did not know of the filing deadline or its consequences, *see* Doc. 17 at 8, plaintiff alleges no facts suggesting that the right-to-sue letter provided insufficient notice.

Plaintiff also asserts that the court should deny defendant's Motion to Dismiss because it was not timely filed. *See* Doc. 17 at 7–9; Doc. 16 at 1–2. This argument falls flat. Defendant's Motion to Dismiss was not untimely. The Federal Rules provide that a defendant must serve its Answer within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1). This same deadline applies to a motion under Rule 12(b)(6) in lieu of an Answer. Fed. R. Civ. P. 12(b). Here, plaintiff served defendant on January 2, 2020. Doc. 5. So, the deadline for defendant to serve a responsive pleading under Rule 12 was January 23. Defendant met that deadline by filing its Motion to Dismiss on January 22. Doc. 6.

In sum, plaintiff failed to commence suit presenting his Title VII claim during the 90-day filing window that the statute affords plaintiffs. By the time he filed this action in our court, his claim already had expired. Plaintiff provides the court with no persuasive reason why his claim remained viable after the deadline. Plaintiff's Complaint brings an expired cause of action and thus fails to state a claim on which relief can be granted.

## II.     Plaintiff's Motion for Leave to Amend Complaint (Doc. 19)

Plaintiff seeks leave to file an Amended Complaint under Federal Rule of Civil Procedure 15. Doc. 19. Defendant opposes plaintiff's motion on the grounds that the proposed Amended Complaint fails to cure the deficiencies of his original Complaint and also is subject

to dismissal.  Doc. 22.  Defendant asserts that plaintiff's claims—as alleged in the proposed

Amended Complaint (Doc. 19-1)—are untimely, fail to invoke the court's jurisdiction, and fail

to state a plausible claim for relief under Title VII.  *Id.* at 2.  The court concludes that the

proposed Amended Complaint would constitute an untimely filing and does not consider other

possible reasons for futility of amendment.

Federal Rule of Civil Procedure 15(a)(2) provides that, after an opposing party files a

responsive pleading, a party may amend its pleading "only with the opposing party's written

consent or the court's leave."  The Rule instructs that courts should "freely give leave [to

amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant

leave to amend is within the court's discretion.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*,

401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment."  *Frank v. U.S. W., Inc.*, 3 F.3d

1357, 1365 (10th Cir. 1993) (citations omitted).  "A proposed amendment is futile if the

complaint, as amended, would be subject to dismissal for any reason . . . ."  *Watson ex rel.*

*Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

Here, defendant argues that plaintiff's proposed Amended Complaint (Doc. 19-1) is

subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  Doc. 23 at 2.  The court

thus applies the standard governing motions to dismiss under Rule 12(b)(6) to determine

whether plaintiff's proposed amendment is futile.  *See, e.g.*, *Little v. Portfolio Recovery Assoc.,*

*LLC*, 548 F. App'x 514, 515 (10th Cir. 2013); *see also Bradley v. Val-Mejias*, 379 F.3d 892,

901 (10th Cir. 2004) (affirming district court's denial of motion for leave to file a second

11

amended complaint on ground that its amended claims would be futile due to statute of limitations bar).  The court reviews the proposed amendment under the Rule 12(b)(6) standard discussed in Part I above.

Defendant argues that plaintiff's proposed Amended Complaint is futile because the "entire complaint would be subject to dismissal under Rule 12(b)(6) because it is untimely, still fails to state a claim for relief under Title VII and fails to invoke this Court[']s jurisdiction as required by Rule 8(a)(1)."  Doc. 22 at 2.

As the court concluded above, plaintiff failed to file his Complaint on time.  *See* Part I. Defendant argues that "Plaintiff's claims remain barred by the applicable statute of limitations" because the proposed Amended Complaint does not "remedy the fact that his Right to Sue was issued on August 19, 2019 and he filed his original Complaint 105 days later on December 2, 2019."  Doc. 23 at 3 (citations to record omitted).  The court agrees.  Plaintiff's proposed Amended Complaint does not allege additional new facts that plausibly render his claims timely.

During this litigation, plaintiff has asserted several theories in an effort to overcome the Complaint's untimeliness problem.  As discussed at length, both above and below, this case does not present circumstances that permit or merit an extension or equitable tolling.  The Amended Complaint is thus subject to dismissal.  *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).  This renders the effort to file an Amended Complaint futile.

The court denies plaintiff's Motion for Leave to Amend Complaint (Doc. 19) because his proposed Title VII claims are untimely, and his proposed amendment is futile.

### III.    Plaintiff's Motion for Leave to Toll (Doc. 20)

When considering defendant's Motion to Dismiss (Doc. 6), the court concluded that plaintiff had asserted no facts that justified equitable tolling of the deadline to file his Title VII claim.  With his Motion for Leave to Toll, plaintiff now asks the court to toll the statute of limitations and asserts a new basis designed to cure his Complaint's untimeliness.[4]  *See* Doc. 20.

Defendant argues that plaintiff's motion (Doc. 20) "fail[s] to present any legal authority or factual circumstances that could justify the equitable tolling of the statute of limitations." Doc. 23 at 1.  The court agrees.

Plaintiff's motion invokes Federal Rule of Civil Procedure 6(b).  *See* Doc. 20 at 4.  Rule 6(b) provides that the court may, for good cause, extend the time of a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  Plaintiff describes several circumstances that he asserts qualify as "excusable neglect" under the Rule and warrant tolling here.  *See* Doc. 20 at 2 (¶¶ I–VI).  But extensions under Rule 6(b) differ from equitable tolling of statutes of limitations.[5]  As discussed above, the 90-day period for filing a civil lawsuit after final disposition of a complaint by the EEOC is

---

[4]      Defendant argues, "Plaintiff has either intentionally or inadvertently filed a surreply without leave from the Court, despite that it is not titled as such" in circumvention of District of Kansas Local Rule 7.1(c) and thus "Plaintiff's Motion to Toll should be struck as an improperly filed surreply."  Doc. 23 at 3–4.  Defendant correctly points out surreplies are disfavored in the District of Kansas and the court doesn't permit them without leave.  The court assumes, without deciding, that plaintiff's motion (Doc. 20) is not an improper surreply and proceeds to consider plaintiff's request that the court toll his statutory filing deadline.

[5]      *See Sherrod v. Breitbart*, 720 F.3d 932, 938 (D.C. Cir. 2013) ("Motions under Federal Rule of Civil Procedure 6(b) cannot extend statutory time limits.  'Every court to have considered this question has held that Rule 6(b) may be used only to extend time limits imposed by the court itself or by other Federal Rules, but not by statute.'" (quoting *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011))); *see also* 4B Charles Alan Wright, *et. al.*, *Federal Practice & Procedure* § 1165 (4th ed.).

subject to equitable tolling. *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996). The court thus considers whether a fuller picture of the circumstances surrounding plaintiff's untimely filing merits equitable tolling under the standard governing equitable tolling of Title VII claims.

### A. Facts Relevant to Plaintiff's Motion for Leave to Toll

Plaintiff asserts he is entitled to equitable tolling given his financial troubles and the mental health challenges he suffered during the period leading up to filing his untimely Complaint. Doc. 20 at 2–3. Plaintiff alleges that he has faced a dire financial situation for some time. *See* Doc. 20 at 2; *see also* Doc. 4 (granting plaintiff's Motion to Proceed *In Forma Pauperis*). Plaintiff alleges that his various financial obligations made clear that "he direly needed additional income" via employment to supplement his Social Security Disability income. Doc. 20 at 2. These financial obligations include overdue property taxes, utility bill debt, and a vehicle title loan debt. *Id.* (¶ II). These obligations have left plaintiff living without utilities and resulted in home foreclosure, repossession of his vehicle and consequent loss of his job at a grocery store, and other legal issues. *Id.* (¶¶ II–III). Plaintiff alleges that some of these hardships pre-dated his employment at Staffmark and he does not clearly specify whether these conditions persisted during his 90-day right-to-file window. *See id.* (¶¶ I–III). Plaintiff does allege that "at the time of filing . . . He was under a huge financial burden being responsible for paying off his mother's financial obligations [her debts][.]" *Id.* (¶ I).

Plaintiff alleges that these financial challenges have harmed his mental health and complicated his "mental disability challenges" that include his "Bi Polar [manic depression]." *Id.* Plaintiff alleges that he was facing "personal financial obligations without assistance and off of medication." *Id.* (¶¶ I–II). He asserts that his financial challenges "left him in a state of

sever[e] mental distress" and "a mental disaster" around the time of filing in December 2019.

*Id.* Plaintiff alleges that his "unfriendly, disturbed, mental state of mind" leaves him "mentally incapable of performing with due diligence, prudence, awareness, punctuality, and alternates like normal, average, people." *Id.*

### B. Legal Standard for Equitable Tolling

As discussed in Part I, the Tenth Circuit has recognized that equitable tolling can apply to Title VII's statute of limitations, but reserves application of the doctrine for a narrow band of circumstances. Equitable tolling of Title VII time limitations applies "only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period." *Biester*, 77 F.3d at 1267 (citations and internal quotation marks omitted). The Circuit has noted that equitable tolling may apply "where a plaintiff has been lulled into inaction by h[is] past employer, state or federal agencies, or the courts[,]" or if the plaintiff is "actively misled" or "in some extraordinary way [has] been prevented from asserting his or her rights." *Id.* (citation and internal quotation marks omitted); *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

The Circuit also has acknowledged the possibility of applying equitable tolling when the plaintiff has suffered a mental incapacity, but "exceptional circumstances" must exist for even that exception to apply. *Biester*, 77 F.3d at 1268. For instance, in *Biester*, the Tenth Circuit declined to toll the statute applicable to the plaintiff's case based on his claim of mental illness where (1) plaintiff had not claimed that he "was adjudged incompetent or institutionalized" or alleged other "exceptional circumstances[,]" (2) "the evidence demonstrate[d] that, in spite of

his mental condition, [plaintiff] was capable of pursuing his own claim[,]" and (3) plaintiff "was represented by counsel throughout the entire 90-day period." *See id.* (internal quotation marks omitted).  Outside the Title VII context, our Circuit likewise has held that "[m]ental incapacity may be an extraordinary circumstance warranting equitable tolling 'only when there is a severe or profound mental impairment, such as that resulting in institutionalization or adjudged mental incompetence.'" *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019) (quoting *Del Rantz v. Hartley*, 577 F. App'x 805, 810 (10th Cir. 2014)) (habeas context).

Mental incapacity indeed has proven to be an elusive basis for equitable tolling. "Although we have acknowledged the possibility of an exception for mental incapacity, we have indicated that 'exceptional circumstances' would have to exist for the recognition of such an exception, and we have yet to actually apply such an exception in any case." *Sullivan v. Harvey*, No. 07-1206, 2007 WL 2828895, at *3 (10th Cir. Sept. 28, 2007) (quoting *Biester*, 77 F.3d at 1268); *see also United States v. Howard*, 800 F. App'x 679, 680 (10th Cir. 2020) ("We have never found equitable tolling based on a claimant's mental capacity." (citation omitted)).

## C.  Discussion

The court accepts plaintiff's descriptions of his personal difficulties and now considers whether these circumstances fit within the very narrow equitable exceptions to Title VII's time limits.

Plaintiff moves this court to toll a statutory deadline based on his mental state as aggravated by financial troubles.  The court considers whether the case presents extraordinary circumstances or "a severe or profound mental impairment, such as that resulting in institutionalization or adjudged mental incompetence." *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019) (citation and internal quotation marks omitted); *see also Biester*, 77

16

F.3d at 1268.  Plaintiff alleges that his mental state worsened from financial stresses, "Bi Polar

[manic depression] and other mental disability challenges."  Doc. 20 at 2 (¶ I).  Plaintiff

provides little factual basis or evidence to support these conclusory allegations about his mental

health.  And, our Circuit has held that even substantiated allegations of mental illness were

insufficient to justify tolling of a filing deadline absent a finding of incompetence.  *See United

States v. Howard*, 800 F. App'x 679, 680 (10th Cir. 2020) (declining to toll the limitations

period in habeas context where a psychological evaluation of party seeking tolling reflected

diagnoses of borderline intellectual functioning, schizoaffective disorder, and bipolar disorder,

but did not show that the party seeking tolling was incompetent to participate in legal

proceedings or unable to pursue his legal claims).

    As defendant argues in its Response to the Motion for Leave to Toll, Doc. 23 at 5,

plaintiff does not allege that a recognized legal authority ever has adjudged him incompetent or

institutionalized him.  He does allege that he has received $750 a month in "Social Security

Disability Income" at some point, but does not elaborate.  Doc. 20 at 2 (¶ II).  It is thus unclear

whether the Social Security Administration found plaintiff mentally incompetent or mentally

disabled or neither.[6]  Other than mentioning this prior receipt of monthly Social Security

Disability income during the motion's discussion of his limited finances, plaintiff has alleged

no facts showing that he was adjudicated mentally incompetent.

    But even if the court were to assume that some institution with authority had adjudged

plaintiff incompetent, he "would still need to show that his alleged mental impairment caused

---

[6]       Navigating similarly limited facts, the Tenth Circuit "note[d] that a finding of mental disability
for purposes of the Social Security Act means only that 'he's incapable of "substantial gainful activity"—
a standard different than that' for legal incompetence."  *Barger*, 784 F. App'x at 608 n.2 (quoting *Veren
v. United States*, 575 F. App'x 841, 842 (10th Cir. 2014)).

the untimeliness." *Barger*, 784 F. App'x at 608; *see also Biester*, 77 F.3d at 1268 (declining to toll the Title VII filing deadline "based upon [plaintiff's] claim of mental illness" where "the evidence demonstrate[d] that, in spite of his mental condition, [plaintiff] was capable of pursuing his own claim." (internal quotation marks omitted)).  Plaintiff broadly asserts such causation.  *See* Doc. 20 at 3 (¶ VI) ("Plaintiff exceeded the filing window due to his mental state of mind").  He asserts that his aggravated mental state left him "incapable of performing with due diligence, prudence, awareness, punctuality," and the like.  *Id* at 2.  But plaintiff's actions and allegations suggest otherwise.

Plaintiff initially asserted that his failure to file his Complaint in a timely manner resulted from (1) his mistaken belief, due to bad advice from the EEOC call center, that "he had one year from the date of the incident to file a lawsuit in Federal Court" and (2) his unawareness[7] of the actual filing rules.  *See* Doc. 17 at 8.  As defendant points out in its Response to the Motion for Leave to Toll (Doc. 23 at 6), despite the severe mental distress that plaintiff asserts he was suffering during the period leading to his untimely filing, plaintiff himself acknowledges that he managed to file his Complaint in accordance with the deadline as he understood it.  *See* Doc. 17 at 8 ("The violations occurred December 5, 2018, and 'one year from that date' would be December 5, 2019, the original date the Plaintiff filed his civil rights complaint (Doc. 1) in court.  And relying on what the EECO call center advised the Plaintiff of, he then filed a civil rights complaint on December 5, 2019.").[8]

---

[7]     Plaintiff asserts in his Response to defendant's Motion to Dismiss that "it wasn't until The Coleman Company, Inc., filed their Motion to Dismiss Plaintiff's civil action (Doc. 6) that he was aware of the 90-day window to file in court."  Doc. 17 at 8.  He since maintains in his Motion for Leave to Toll that "he did not admit to not knowing or understanding the filing window or time frame in his Memorandum."  Doc. 20 at 3 (¶ VI).

[8]     Plaintiff actually filed his Complaint on December 2, 2019.  *See* Doc. 1 at 1.  In any case, he filed before his mistaken deadline of December 5, 2019.

Plaintiff's assertions do not explain why his mental state left him "mentally incapable of performing with [the] due diligence, prudence, awareness, [and] punctuality" necessary to comply with the actual filing deadline, but did not affect his ability to comply with the deadline as he mistakenly believed it to be.  Doc. 20 at 2 (¶ III).  So, "the evidence shows that he was not so incapacitated that he was unable to pursue his lawsuit."[9]  *Biester*, 77 F.3d at 1268; *see also Maynard v. Chrisman*, 568 F. App'x. 625, 627 (10th Cir. 2014) (concluding that equitable tolling was not justified where a petitioner previously found incompetent to stand trial "provided no evidence, except his conclusory allegations, that his mental illness prevented him from filing a timely habeas petition.").  Here, plaintiff has not shown that his mental state prevented timely filing.

Plaintiff "has not alleged the 'exceptional circumstances' required by most courts to toll the statute." *Biester*, 77 F.3d at 1268.  The court cannot conclude that he has "in some extraordinary way been prevented from asserting his . . . rights . . . ." *Sullivan*, 2007 WL 2828895, at *3 (citation and internal quotation marks omitted).  Plaintiff's pro se status does not spare him from this requirement.  *See id.* at *2–4 (affirming district court's decision not to apply equitable tolling of Title VII deadline based on pro se plaintiff's assertion of mental impairment or incapacity where the circumstances alleged were not truly "exceptional").  The court thus concludes that the facts here do not fall within the narrow circumstances which the law requires for equitable tolling.  For this reason, the court denies plaintiff's Motion for Leave to Toll (Doc. 20).

---

[9]     Plaintiff's suggestion that, despite his prior assertion of unawareness, he was not unaware of the 90-day filing deadline, *compare* Doc. 20 at 3 (¶ VI) *with* Doc. 17 at 8, does not alter this conclusion. Causation is absent under either of plaintiff's competing narratives about his awareness of the proper filing window.

**IV.      Plaintiff's Motion to Appoint Counsel (Doc. 25)**

Finally, plaintiff requests that the court appoint him counsel.  Doc. 25.  A party to a civil action has no constitutional right to appointed counsel.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989).  Section 1915(e)(1) in Title 28 of the United States Code provides that the "court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  The court has broad discretion when deciding whether to appoint counsel, but "[b]efore counsel may be appointed, a plaintiff must make affirmative showings of (1) financial inability to pay for counsel, (2) diligence in attempting to secure counsel and (3) meritorious allegations of discrimination."  *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992).  The party moving for appointment of counsel bears the burden of convincing the court that sufficient merit exists to his claim to warrant appointment of counsel.  *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

Plaintiff has not shown that his allegations of discrimination are sufficiently meritorious.  To the contrary and as discussed above, plaintiff pursues time-barred claims.  The Complaint fails to state a claim on which relief can be granted and cannot be cured by amendment.  The court thus denies plaintiff's Motion to Appoint Counsel (Doc. 25).

**V.       Conclusion**

For the reasons explained above, plaintiff's Complaint asserts claims under Title VII that are time barred by the applicable statute of limitations.  The case does not present the circumstances necessary for equitable tolling to apply.  The Complaint is thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), a problem for which amendment offers no cure here.  Given this defect, the court cannot conclude that there is sufficient merit to plaintiff's claim to warrant appointment of counsel.

This court thus grants defendant's Motion to Dismiss (Doc. 6) for failure to state a claim on which relief can be granted, denies the plaintiff's Motion for Leave to Amend Complaint (Doc. 19) based on futility, denies plaintiff's Motion for Leave to Toll (Doc. 20), and denies plaintiff's Motion to Appoint Counsel (Doc. 25).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 6) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to Amend Complaint (Doc. 19) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to Toll (Doc. 20) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's Motion to Appoint Counsel (Doc. 25) is denied.

**IT IS SO ORDERED.**

**Dated this 25th day of September, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**